**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE ANTHONY DIMATTEO, ET AL.,<br><br>Defendants. | Case No. 1:26-cv-603<br><br>Judge Colleen McMahon |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**LAWRENCE ANTHONY DIMATTEO'S MOTION TO DISMISS THE**
**<u>SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT</u>**

SCHERTLER ONORATO MEAD SEARS & MANNING

Danny C. Onorato (*pro hac vice*)
Stuart A. Sears (*pro hac vice*)
Tara N. Tighe (*pro hac vice*)
Schertler Onorato Mead Sears & Manning
555 13th Street, N.W. | Suite 500 West
Washington, DC 20004
donorato@schertlerlaw.com
ssears@schertlerlaw.com
ttighe@schertlerlaw.com
Phone: (202) 628-4199
Fax: (202) 628-4177

*Counsel for Defendant Lawrence Anthony DiMatteo*

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………………….. 1

ARGUMENT …………………………………………………………………………….….…….. 2

    I.   The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 10(b) of the Securities Exchange Act. ………………………… 3

    II.  The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 17(a) of the Securities Exchange Act. ……………. 12

    III. The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 13 of the Securities Exchange Act. ………………….…... 13

    IV. The SEC has not pled facts sufficient to show that Mr. DiMatteo was negligent with respect to the proxy statement for the business combination between TDAC and Lottery to support a cause of action under Section 14(a) of the Securities Exchange Act. …………………………………………………………. 14

    V.  The SEC also fails to plead a cause of action against Mr. DiMatteo as a control person under Section 20(a) of the Securities Exchange Act. …………………………….………. 15

CONCLUSION ……………………………………………………………………………….... 16

i

## TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Grp., Inc.*, 47 F.3d 47 (2d Cir. 1995) …………………………………………… 7

*Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98 (2d Cir. 2012) …………………………… 7

*APERS v. Bristol-Myers Squibb Co.*, 28 F.4th 343 (2d Cir. 2022) ………………………..… 3, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………………………... 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ……………………… 6, 16

*Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ……………………………………..… 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………………………..… 3

*Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251 (S.D.N.Y. 2003) ……………… 14

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ……………………………………………… 8

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464 (S.D.N.Y. 2008) …………... 11

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) …………………………………………………………………………………… 5, 6, 7

*Emps.' Ret. Sys. of Gov't of V.I. v. Blanford, 794 F.3d 297 (2d Cir. 2015) ………………………. 16*

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ………………………………… 6, 8, 10

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y 2004) ………………..… 11

*In re Citigroup Sec. Litig.*, 2023 WL 2632258 (S.D.N.Y. May 24, 2023) ………………………. 9

*In re DraftKings Inc.*, 2023 WL 14559 (S.D.N.Y. 2023) ………………………………………... 3, 5, 6, 7

*In re Lottery.com, Inc. Sec. Litig. (Lottery I)*, 715 F. Supp. 3d 506 (S.D.N.Y. 2024) …… 4, 5, 7, 8

*In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553 (S.D.N.Y. 2014) ………………………………….. 8

*In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) ……………………..… 5

*In re Renewable Energy Grp. Sec. Litig.*, No. 22-335, 2022 WL 14206678 (2d Cir. 2022) …… 10

*In re ShenggaTech Inc. Sec. Litig.*, 2014 WL 3928606 (S.D.N.Y. 2014) ………………………… 16

*In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528 (S.D.N.Y. 2014) …………...… 16

*Jun v. 500.com Ltd.*, 2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021) …………………………… 10

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ………………………………………….… 6, 7, 10

*Lighthouse Fin. Grp. v. Royal Bk. of Scot. Grp., PLC*, 902 F. Supp. 2d 329 (S.D.N.Y. 2012) … 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ……….. 6

*Malin v. XL Cap. Ltd.,* 499 F. Supp. 2d 117, 162 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ………………………………………………………………………………………. 11

*Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ……………………………………... 5, 6, 7, 9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) …. 4

*Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86 (2d Cir. 2010) …………………………………………………………………………………...… 3-4

*Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003) …………………………………………………. 13

*Resnik v. Swartz*, 303 F.3d 147 (2d Cir. 2002) ………………………………………...… 5

*Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38 (2d Cir. 1978) ……………………………… 9

*S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98 (2d Cir. 2009) ………………………….… 6

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona, Inc.*, 732 F. Supp. 3d 300 (S.D.N.Y. 2024) …………………………………………………………………………………...... 9

*SEC v. Coven*, 581 F.2d 1020 (2d Cir. 1978) …………………………………………………. 12

*SEC v. Farnsworth*, 692 F. Supp. 3d 157 (S.D.N.Y. 2023) ………………………………….. 13

*SEC v. Hurgin*, 4848 F. Supp. 3d 98 (S.D.N.Y. 2020) ……………………………………….. 14

*SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) …………………………………… 3

*Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019) ……………………………………………… 4

*Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) ………………………………………… 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308 (2007) ……………………………… 5, 7

*United Paperworkers International Union v. Int'l Paper Co.*, 985 F.2d 1190 (2d Cir. 1993) .… 14

*Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987 (2d Cir. 1988) ……………………………..… 14

**Statutes**

Securities and Exchange Act § 10(b) ……………………………………………..… 1, 3, 5, 6, 12

Securities and Exchange Act § 13 ………………………………………………………… 13

Securities and Exchange Act § 14(a) ……………………………………………………… 2, 14

Securities and Exchange Act § 17(a) ………………………………………………………. 12

Securities and Exchange Act § 20 ……………………………………………...… 2, 15, 16

15 U.S.C. § 78j(b) ………………………………………………………………………... 3

15 U.S.C. § 78m …………………………………………………………………………… 13

15 U.S.C. § 78u-4(b)(2) ………………………………………………………………….. 5

**Regulations**

17 C.F.R. § 240.10b-5 …………………………………………………………………… 3

17 C.F.R. § 240.13b2-2 …………………………………………………………………13

17 C.F.R. § 240.13a-14 …………………………………………………………………… 13

**Rules**

Fed. R. Civ. P. 9 ………………………………………………………………………... 1, 6, 16

Fed. R. Civ. P. 12 ……………………………………………………………………… 1, 2, 16

SEC Rule 10(b)(5) ……………………………………………………………………… 3, 5

SEC Rule 13(b) ………………………………………………………………………... 13

SEC  Rule 14 ……………………………………………………………………...…… 14

**INTRODUCTION**

Defendant Lawrence Anthony DiMatteo respectfully asks the Court to dismiss the Securities and Exchange Commission's ("SEC") Complaint (ECF 1) against him pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

AutoLotto combined with Trident Acquisitions Corporation ("TDAC") in late October 2021 and became Lottery.com ("Lottery"). Mr. DiMatteo was Chairman and CEO of Lottery until 2022. After the business combination, Lottery conducted an internal investigation and made a series of public disclosures to clarify its financial condition and legal and regulatory compliance. This retrospective information does not support a cause of action by the SEC. Most notably, the SEC does not allege facts to show that Mr. DiMatteo had contemporaneous access to specific and particularized information that made any statement about Lottery false when statement was made.

First, Lottery's pre-merger statements about its financial performance are not actionable as false or misleading statements under Section 10(b) of the Securities Exchange Act because they were forward looking and accompanied by sufficient cautionary language. Similarly, Lottery's general statements about legal and regulatory compliance – both before and after the business combination – are not actionable under Section 10(b).

Second, the SEC has failed to plead facts to show that Mr. DiMatteo had the requisite scienter to support a cause of action under Section 10(b) of the Securities Exchange Act, which prohibits false or misleading statements in connection with the purchase or sale of securities. First, the SEC has not pled facts to show that Mr. DiMatteo had a concrete and personal motive to defraud investors. General desire for a business to appear profitable, to keep the stock price high, or to consummate a business transaction are common to most corporate officers and cannot support a cause of action under Section 10(b). Similarly, the SEC has failed to allege facts to show that Mr.

1

DiMatteo and other Lottery executives selling shares of the company after the business combination was unusual enough to suggest misconduct or bad faith. Additionally, the SEC's allegations about Mr. DiMatteo's role as CEO of Lottery, his departure from the company, Lottery's restatements of its revenue and compliance information, and parallel investigations by the Department of Justice and the SEC fail to give rise to a strong inference that Mr. DiMatteo acted recklessly with respect to any statements about Lottery, its finances, or its legal and regulatory compliance. The SEC has failed to show that Mr. DiMatteo was aware of specific contradictory information that made any statement about Lottery false or misleading when the statement was made.

Third, the SEC has failed to show that Mr. DiMatteo was a culpable participant in any alleged misstatements in the proxy statement for the combination between TDAC and Lottery under in order to support a claim under Section 14(a) of Securities Exchange Act.

Finally, the SEC has failed to state a claim for control person liability against Mr. DiMatteo pursuant to Section 20(a) of the Securities Exchange Act because the SEC has failed to establish that he acted with the requisite scienter or as a culpable participant in any alleged securities violation.

For all the reasons outline herein, the SEC has failed to allege facts to show that Mr. DiMatteo had contemporaneous access to specific and particularized information that made any statement about Lottery false when statement was made. Accordingly, as detailed below, the SEC has failed to plead a plausible cause of action against Mr. DiMatteo under the securities laws.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual support to state a claim for relief that is plausible on its face.

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible if the plaintiff pleads enough facts to allow the Court to *reasonably* infer that the defendant is liable for the alleged misconduct. *Id*. A complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## I.    The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 10(b) of the Securities Exchange Act.

Section 10(b) of the Securities Exchange Act (the "Exchange Act") makes it unlawful to "use or employ, in connection with the purchase or sale of any security" any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission [(SEC)] may prescribe." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citing 15 U.S.C. § 78j(b)). SEC Rule 10b-5 prohibits "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id*. (citing 17 C.F.R. § 240.10b-5). To state a claim under Section 10(b) and Rule 10b-5, the SEC must plead with particularity a material misrepresentation or omission by the defendant; scienter; and a connection between the misrepresentation or omission and the purchase or sale of a security. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968). Here, the SEC has failed to plead a plausible Section 10(b) claim against Mr. DiMatteo.

### A.    Many of the statements referenced in the SEC's complaint are not actionable as false or misleading statements under Section 10(b).

"The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." *Arkansas Pub. Emps. Ret. Sys. (APERS) v. Bristol-Myers Squibb Co., 28 F.4th 343, 354 (2d Cir. 2022)* (quoting *Operating*

3

*Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010)). Ultimately, "whether a statement is 'misleading' depends on the perspective of the reasonable investor." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). "The inquiry (like the one into materiality) is objective," *id.* at 187, and it considers not only a statement's "literal truth," but also the "context and manner of presentation," *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (citation omitted).

A "forward looking statement accompanied sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *In re Lottery.com, Inc. Sec. Litig. (Lottery I)*, 715 F. Supp. 3d 506, 538 (S.D.N.Y. 2024) (citations omitted). The cautionary language must be reasonably specific as opposed to generic boilerplate so as to constitute a real warning to investors. *Id.* (citations omitted). Lottery's pre-merger financial statements were forward looking projections accompanied by specific and clear cautionary language. Accordingly, Lottery's pre-merger financial statements are not actionable as false or misleading.

"[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable puffery, meaning that they are too general to cause a reasonable investor to rely upon them." *Lottery I*, 715 F. Supp. 3d at 536 (citations omitted). Such statements "cannot have misled a reasonable investor," and therefore they "cannot constitute actionable statements under the securities laws." *Id.* (citations omitted). Accordingly, Lottery's general statements about its legal and regulatory compliance are not actionable as false or misleading.

**B. The SEC has not pled facts sufficient to show that Mr. DiMatteo acted with the requisite scienter to support a cause of action against Mr. DiMatteo under Section 10(b) of the Securities Exchange Act.**

A corporate official "need not be clairvoyant" and a plaintiff cannot "plead fraud by

hindsight." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010). Instead, corporate officials are "only responsible for revealing those material facts reasonably available to them." *Novak*, 216 F.3d at 309. Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *In re DraftKings Inc.*, 2023 WL 145591 at *15 (citations omitted). A company is not required to disclose information merely because it may be relevant or interesting to reasonable investors. *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002). "Silence, absent a duty to disclose, is not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

A plaintiff alleging securities fraud must, among other things, articulate specific and particularized facts sufficient to create a strong inference that the defendant the defendant acted with the required state of mind or scienter to deceive, manipulate, or defraud. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs, Inc. v. Makor Issues & Rights, Ltd,* 551 U.S. 308, 313-14 (2007) (both cases citing 15 U.S.C. § 78u-4(b)(2)). The inference of scienter must be more than plausible; it must be strong enough that a reasonable person would deem it cogent and *at least as compelling* as any opposing inference. *In re DraftKings Inc.*, 2023 WL 145591 at *15; *Tellabs*, 551 U.S. at 313-14. Where a "plausible, nonculpable" explanation is more likely than fraud, the plaintiff has failed to establish scienter. *Id*. To meet this standard, a plaintiff must present "facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

Under either standard, the plaintiff must show that the defendant was aware of or had access to specific information that contradicted the relevant statement when the statement was made. *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009). The plaintiff must

5

specifically identify the contradictory reports or statements or must provide specific instances in which a defendant received information that was contrary to their public declarations. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011); *Novak v. Kasaks*, 216 F.3d 300, 308-9 (2d Cir. 2000) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

To plead motive, the Second Circuit requires particularized allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). Where motive is not apparent, a plaintiff must plead scienter by identifying "circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (2d Cir. 2001). At a minimum, the requisite state of mind is "conscious recklessness." *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 109 (2d Cir. 2009). The Second Circuit has "typically found it sufficient to state a claim based on recklessness if the complaint 'specifically alleges defendants' knowledge of facts or access to information contradicting their public statements.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (alteration adopted) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).

Further, Section 10(b) claims must meet the heightened requirements for fraud claims under Federal Rule of Civil Procedure 9(b), which mandates that a party alleging fraud must "state with particularity the circumstances constituting fraud." *See In re DraftKings Inc.*, 2023 WL 145591 at *14 (citing *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009)). Conclusory allegations and unsupported factual assertions are insufficient. *Id.* (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Rule 9(b) requires Plaintiffs to specify the time, place, and contents of each misrepresentation, and

6

"explain [with particularity] why the statements were fraudulent." *Anschutz Corp.* v. *Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012).

The proper inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. Specifically:

> [A] court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even "the most plausible of competing inferences[.]" . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible" — it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id*. Here, the SEC has failed to plead facts to show that Mr. DiMatteo acted with the requisite state of mind to deceive, manipulate, or defraud.

### i. The SEC has not pled facts to show that Mr. DiMatteo had a concrete and personal motive and opportunity to defraud or deceive investors.

"[T]o raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that [Defendant] or its officers 'benefitted in some concrete and personal way from the purported fraud." *ECA*, 553 F.3d at 198 (quoting *Novak*, 216 F.3d at 307-08). "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.* (citations omitted). "Without more, 'executive compensation dependent upon stock value does not give rise to a strong inference of scienter.'" *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

Moreover, courts in this Circuit "routinely decline to find scienter based on a desire to 'benefit from a higher share price' in the context of public offerings." *Lottery I*, 715 F. Supp. 3d

at 554 (collecting cases)). Generalized allegations of a desire to achieve favorable terms in a merger or acquisition are insufficient." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (quotation omitted). Specifically, a generalized motive to appear profitable, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter. *Id*.

Additionally, stock sales may support allegations of scienter when those trades are suspicious in timing or amount. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 584 (S.D.N.Y. 2014). Whether trading was unusual or suspicious turns on factors like:

> (1) the amount of net profits realized from the sales; (2) the percentages of holdings sold; (3) the change in volume of insider defendant's sales; (4) the number of insider defendants' selling; (5) whether sales occurred soon after statements defendants are alleged to know to be misleading; (6) whether sales occurred shortly before corrective disclosures or materialization of the alleged risk; and (7) whether sales were made pursuant to trading plans such as Rule 10b5-1 plans.

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011) (collecting cases).

Finally, the prospect of a public offering, standing alone, is insufficient to establish motive. *Lottery I*, 715 F. Supp. 3d at 555.

The SEC alleges that the Defendants, including Mr. DiMatteo, were motivated to complete the merger and achieve higher stock prices so they would ultimately make more money.[1] Specifically, the SEC alleges that "higher salaries" and "the prospect of owning millions of shares of publicly traded stock" were "powerful incentives."[2] The SEC further alleges that the Lottery executives "could receive additional 'earnout' shares if Lottery's stock price achieved specific thresholds after the merger.[3] Thus, the SEC claims that the Lottery executives were "[m]otivated

---

[1] SEC Complaint, ECF 1.
[2] SEC Complaint, ECF 1 at ¶ 73.
[3] *Id*. at ¶ 74.

by economic incentives" to complete the merger.[4] However, like the private plaintiffs, the SEC fails to identify any unique motivation that is not common to most corporate officers who want to ensure profitability and rising stock prices. The SEC points to no concrete and personal incentive for Mr. DiMatteo. Further, the SEC does not identify any specific unusual stock sales that suggest wrongdoing. Accordingly, like the private plaintiffs, the SEC has failed to establish that Mr. DiMatteo had a motive to mislead investors.

> **ii. The SEC has failed to allege facts sufficient to show conscious misbehavior or recklessness.**

"If no motive or opportunity (other than a generalized business motive) is shown, the circumstantial evidence of conscious misbehavior must be correspondingly greater and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care," *APERS*, 28 F.4th at 355 (quotation marks and citation omitted), "to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it," *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978) (quotation marks omitted). "The extreme departure 'approximates actual intent, and not merely a heightened form of negligence.'" *San Antonio Fire & Police Pension Fund v. Dentsply Sirona, Inc.*, 732 F. Supp. 3d 300, 317 (S.D.N.Y. 2024) (citation omitted).

"'[W]here scienter is based on a defendant's knowledge of and/or access to certain facts,' Plaintiffs must allege facts showing that: (i) '*specific* contradictory information was available to defendants' (ii) '*at the same time* they made their misleading statements.'" *In re Citigroup Sec. Litig.*, No. 20-cv-09132 (LAP), 2023 WL 2632258, at *22 (S.D.N.Y. May 24, 2023) (emphasis in original) (citation omitted). Moreover, a plaintiff "must specifically identify the reports or statements containing" the contrary information. *Id.* (quoting *Novak*, 216 F.3d at 309). Plaintiffs

---

[4] *Id*. at 75.

allegations fall short of this demanding standard.

### a. Mr. DiMatteo's position as Lottery's CEO.

Generalized allegations about what a defendant may have known in the context of their role as an executive are insufficient to establish scienter. *In re Renewable Energy Grp. Sec. Litig.*, No. 22-335, 2022 WL 14206678, at *3 (2d Cir. 2022) (citation omitted) (citation omitted) (quoting *Kalnit*, 264 F.3d at 142). Accordingly, being an executive is not independently sufficient to establish that Mr. DiMatteo concealed information about the company.

### b. Mr. DiMatteo's resignation.

Without some specific evidence of unusual or suspicious circumstances, the fact that an executive resigns during or after an investigation is not enough to support a securities fraud claim. *See, e.g.*, *Jun v. 500.com Ltd.*, CV 20-806 (GRB) (AKT), 2021 WL 4260644, at *2 (E.D.N.Y. Sept. 20, 2021) (ruling that defendant's resignation at the conclusion of internal investigation was not enough to show scienter); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011) ("resignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter"). "[T]hat a corporate executive would resign from a company under investigation" for accounting irregularities "hardly seems suspect"—there are many plausible explanations that do not involve knowledge of any scheme to defraud. *Jun*, 2021 WL 4260644, at *2.

Indeed, without some evidence of specific misconduct, terminations and resignations "are at least as consistent with punishing those at the helm for their poor judgment and leadership" as with their "relating to concocting a scheme to defraud shareholders." *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 343 (S.D.N.Y. 2012), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383

(2d Cir. 2015); *see, e.g., Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ("Plaintiffs have alleged and the [New York Insurance Department] found various management problems, accounting deficiencies, and lack of organization. In the absence of facts connecting [executives of the company] to the alleged fraud, it is more likely that they were terminated and resigned as a result of company mismanagement, not securities fraud."), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (summary order). Accordingly, the SEC's suggestion that Mr. DiMatteo must have known and concealed information about Lottery because he resigned as its CEO are insufficient to establish scienter.

### c. *Lottery's finances and transactions.*

The SEC alleges that the Defendants engaged in multiple transactions to artificially inflate Lottery's revenue and profitability.[5] However, the SEC does not offer any facts to show that Mr. DiMatteo had contemporaneous access to information that would have made Lottery's statements about its finances or the underlying transactions false at the time the statements were made. Indeed, the SEC does not plead facts sufficient to show that Mr. DiMatteo was aware of the nature and specifics of the underlying transactions. Instead, the SEC asks the Court to infer, without particularized factual support, that Mr. DiMatteo must have misrepresented Lottery's finances. The SEC also emphasizes that Lottery ultimately restated its revenue and other financial numbers. However, the "mere fact of a restatement of earnings does not support a strong, or even a weak, inference of scienter." *City of Brockton Ret. Sys. v. Shaw Grp. Inc,* 540 F. Supp. 2d 464, 472 (S.D.N.Y. 2008) (citing *In re Bristol-Myers Squibb Sec. Litig.,* 312 F. Supp. 2d 549, 560 (S.D.N.Y. 2004)). Here, the magnitude of Lottery's financial restatements, the centrality of the revenue to the company's core operations, the departures of the company's executives, even when considered

---

[5] SEC Complaint, ECF 1.

wholistically, were insufficient to give rise to a strong inference of scienter.

Based on the foregoing, even when considered wholistically, the SEC fails to articulate the specific and particularized facts to create the strong inference that Mr. DiMatteo acted with the requisite state of mind to defraud or deceive in order to support a plausible Section 10(b) claim. For all the same reasons, the SEC has failed to articulate a plausible claim that Mr. DiMatteo aided and abetted any alleged violation of Section 10(b) by Lottery.

**II. The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 17(a) of the Securities Exchange Act.**

The standard for establishing a violation of Section 17(a) of the Exchange Act is "essentially the same" as under Section 10(b), although no showing of scienter is required for the SEC to obtain an injunction under Sections 17(a)(2) or (a)(3). *Sec. & Exch. Comm'n v. LaGuardia*, 679 F. Supp. 3d 34, 40 (S.D.N.Y. 2023) (citations omitted). However, the SEC must at least establish that the defendant acted negligently. *Sec. & Exch. Comm'n v. Coven*, 581 F.2d 1020, 1027 (2d Cir. 1978) ("Impressive policies support an interpretation of s 17(a) enabling the SEC to seek injunctive relief on the basis of negligent conduct. The essential nature of an SEC enforcement action is equitable and prophylactic; its primary purpose is to protect the public against harm, not to punish the offender."). Section 17 does not impose strict liability, and the SEC has failed to plead any facts to suggest that Mr. DiMatteo had access to contradictory information that made any statement about Lottery false when it was made. Therefore, the SEC has not met its burden to create a strong inference that Mr. DiMatteo acted negligently. For all the same reasons, the SEC has failed to articulate a plausible claim that Mr. DiMatteo aided and abetted any alleged violation of Section 17(a) by Lottery.

12

**III. The SEC has not pled facts sufficient to support a cause of action against Mr. DiMatteo under Section 13 of the Securities Exchange Act.**

Section 13(a) of the Exchange Act, codified at 15 U.S.C. § 78m, requires "'every issuer having securities registered' with the SEC to file annual [and quarterly] reports including certain financial information." *Ponce v. S.E.C.*, 345 F.3d 722, 734 (9th Cir. 2003). Similarly, Section 13(b)(2)(A) of the Exchange Act requires issuers of securities to make and keep accurate books, records, and accounts that reflect the company's transactions and disposition of assets. 15 U.S.C. § 78m(b)(2)(A). 17 C.F.R. § 240.13b2-1. Mr. DiMatteo did not issue securities, so he cannot be directly liable under these sections. To establish that an individual aided and abetted a Section 13 violation, the SEC must establish "knowledge of this violation on the part of the aider and abettor; and substantial assistance by the aider and abettor in the achievement of the primary violation." *Sec. & Exch. Comm'n v. Farnsworth*, 692 F. Supp. 3d 157, 196 (S.D.N.Y. 2023) (citations omitted). Here, the SEC has not pled facts to show that Mr. DiMatteo specifically knew about or assisted in any inaccuracies in financial reporting or records.

Additionally, Section 13(b)(5) prohibits knowingly falsifying books and records. 15 U.S.C. § 78m(b)(5). Similarly, under Rule 13b2-1, "[n]o person shall directly or indirectly, falsify or cause to be falsified, any book, record or account subject to [S]ection 13(b)(2)(A)." Rule 13b2-2 prohibits officers and directors from making false representations to accountants. 17 C.F.R. § 240.13b2-2. Rule 13a-14 requires principal financial officers to execute a certification for certain public filings. 17 C.F.R. § 240.13a–14. Again, the SEC has not pled facts sufficient to show that Mr. DiMatteo had access to contradictory information that made any financial record or representation, certification, or statement to any accountant false at the time it was made.

The SEC has not pled a plausible cause of action against Mr. DiMatteo under Section 13 or to show that Mr. DiMatteo aided and abetted any alleged violation of Section 13 by Lottery.

13

**IV. The SEC has not pled facts sufficient to show that Mr. DiMatteo was negligent with respect to the proxy statement for the business combination between TDAC and Lottery to support a cause of action under Section 14(a) of the Securities Exchange Act.**

Section 14(a) "makes it unlawful to solicit proxies in contravention of any rule or regulation promulgated by the SEC." *United Paperworkers International Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993). SEC Rule 14a-9 prohibits the issuance of a proxy statement that is "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). Liability under Section 14(a), "can be imposed for negligently drafting a proxy statement." *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *accord Sec. & Exch. Comm'n v. Hurgin*, 484 F. Supp. 3d 98, 116 (S.D.N.Y. 2020). To state a claim under Section 14(a), a plaintiff must "plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants." *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003).

The SEC alleges that the proxy statement soliciting approval for the business combination between TDAC and Lottery contained false or misleading statements and omissions about Lottery's financial condition and operations.[6] The SEC does not, however, allege that Mr. DiMatteo authored, approved, or submitted the proxy statement.[7] Similarly, the SEC does not allege that Mr. DiMatteo directly provided any information that was included in the proxy statement.[8] In contrast, the SEC explicitly acknowledges that Defendant Komissarov "was involved in drafting, editing, and reviewing the Prospectus/Proxy and he approved its filing with the Commission."[9] With respect to Mr. DiMatteo, the SEC alleges that Mr. DiMatteo and the other

---

[6] SEC Complaint at ¶¶ 6(e) and (g), 63, 64, 65, 127-129, 130-133.
[7] *Id.* at ¶¶ 64-65.
[8] *Id.*
[9] *Id.* at ¶ 64.

14

Lottery executives knew that their names were being used in the proxy statement.[10] The SEC further alleges that the proxy statement included detailed biographies of Mr. DiMatteo and the other Lottery executives, noting their experience and other qualifications.[11] The SEC further alleges that the proxy statement included a detailed history of Lottery and its financial condition and operations and explained that Mr. DiMatteo and the other Lottery executives would lead the combined company if the merger occurred.[12] The SEC summarily alleges that Mr. DiMatteo and the other Lottery executives "knew or were reckless in not knowing that the financial results and the cost of the Mexican acquisitions, which Lottery supplied to Trident for the Proxy Statement/Prospectus, were materially false."[13] However, the SEC offers no facts to support its conclusory allegation that Mr. DiMatteo was negligent with respect to the proxy statement. Specifically, the SEC has not alleged facts sufficient to show that Mr. DiMatteo had contemporaneous access to any information that gave him any reason to believe that the information in the proxy statement was false at the time the proxy statement was submitted. Section 14(a) of the Securities Exchange Act does not impose strict liability. Instead, a plaintiff must allege facts sufficient to create a strong inference that the defendant acted negligently. Here, the SEC fails to meet that burden with respect to Mr. DiMatteo. For all the same reasons, the SEC has failed to articulate a plausible claim that Mr. DiMatteo aided and abetted any alleged violation of Section 14(a) by Lottery.

**V. The SEC also fails to plead a cause of action against Mr. DiMatteo as a control person under Section 20(a) of the Securities Exchange Act.**

Under Section 20(a), individual executives are secondarily liable for securities violations

---

[10] *Id*. ¶ 64.
[11] *Id*. at ¶ 65.
[12] *Id*. at ¶ 65.
[13] *Id*. at ¶ 64.

by the company. *Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*,794 F.3d 297, 305 (2d Cir. 2015) To sustain a claim of control-person liability under Section 20(a), Plaintiffs must prove by a preponderance of the credible evidence that there was "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI*, 493 F.3d at 108. "[C]ulpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss." *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 542 (S.D.N.Y. 2016) (quoting *In re ShengdaTech, Inc. Sec. Litig.*, No. 11-cv-01918 (LGS), 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014)). For all the reasons stated above, the SEC has not pled facts sufficient to show that Mr. DiMatteo culpably participated in any of the alleged violations. Accordingly, the SEC has failed to plead a plausible Section 20(a) claim against Mr. DiMatteo individually.

## CONCLUSION

The SEC's Complaint fails to allege a plausible cause of action against Defendant Anthony Lawrence DiMatteo. Accordingly, Mr. DiMatteo respectfully moves the Court to dismiss the Complaint against him with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Respectfully submitted,

/s/ *Tara N. Tighe*
Danny C. Onorato (*pro hac vice*)
Stuart A. Sears (*pro hac vice*)
Tara N. Tighe (*pro hac vice*)
Schertler Onorato Mead Sears & Manning
555 13th Street NW | Suite 500 West
Washington, DC 20004
donorato@schertlerlaw.com

16

ssears@schertlerlaw.com
ttighe@schertlerlaw.com
Phone: (202) 628-4199
Fax: (202) 628-4177

*Counsel for Defendant Lawrence Anthony DiMatteo*

17

**CERTIFICATE OF SERVICE**

I, the undersigned, certify as follows:

I am not a party to the above case, and I am over 18 years old.

On May 8, 2026, I filed the foregoing document with the Clerk of this Court using the Court's CM/ECF electronic filing system, which will serve automatic electronic notice of this filing to all counsel of record in this case.

I affirm under penalty of perjury that the foregoing is true and correct.


/s/ *Tara N. Tighe*
Tara N. Tighe

18